IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ERIK SCOTT MEDIA, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>OWNERS INSURANCE COMPANY, a Michigan corporation,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br><br><br>Case No. 2:16-cv-35<br>Judge Dee Benson |

Before the Court are the parties cross-motions for summary judgment. [Dkt. 27, 32]. A hearing was held on the motions on May 15, 2018 at which Plaintiff was represented by Brennan Moss and Defendant was represented by Peter Barlow. The Court took the motions under advisement. Shortly after the hearing, the parties notified the Court that they were engaging in mediation to resolve their disputes. Having now been informed by the parties that their mediation efforts were not successful, the Court issues this Memorandum Decision and Order.

**BACKGROUND**

Plaintiff Erik Scott Media, LLC ("ESM") operates a third-party logistics business that

1

stores and ships products for their manufacturers. Dkt. 27 ¶1. ESM is insured by Owners Insurance Company ("Owners") under a policy of insurance entitled Tailored Protection Policy ("the Policy"), policy number 064643-57050255-13. *Id*. at Ex. 2. The Policy includes commercial property coverage and commercial general liability coverage. *Id*. Between November 14, 2014 and the end of 2014, ESM made errors in the shipments of products. *Id*. at Exs. 3 & 4. One instance occurred when ESM's operations manager downloaded a batch of orders from one of its clients, Wise Company, that contained approximately 10,000 orders. *Id*. at Ex. 4. She accidentally downloaded the same 500 orders twice and those orders were then shipped by ESM. *Id*. Another instance occurred when an ESM employee unintentionally sent the wrong products to customers. *Id*. After ESM discovered the errors, it cancelled and retrieved some of the shipments. Some customers voluntarily returned the erroneously shipped products. *Id*. at Ex. 3. ESM was able to retrieve about 60% of the mis-shipped orders. *Id*. Wise Company directed ESM to discontinue contacting its customers to whom the double shipments were sent because the contact by ESM was "too intrusive." *Id.* Wise Company requested a credit from ESM in an amount equal to the products which were shipped erroneously and not retrieved. *Id*. ESM provided the credit to Wise Company.

In February, 2015, ESM filed a claim under its insurance policy with Owners for recovery of damages in the amount of $302,496.85. *Id*. at Exs. 3. Included in this figure is the amount of the unretrieved mis-shipped products equaling $92,759.36. ESM also claims shipping costs of $51,580.88 and additional labor costs of $106,770.90 incurred in retrieving the products. *Id* at Ex. 3.

Owners assigned a senior claims representative specialist as the adjuster for ESM's claims. He investigated the claim and conducted interviews of ESM's owners and managers. *Id*. The adjuster issued a coverage position letter on behalf of Owners, denying ESM's claim. *Id*. at Exs. 8. The letter states that ESM's claim did not fall within the coverage provisions which require: "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." *Id*. The coverage position letter states that coverage for ESM's claim is additionally barred by the exclusionary provision prohibiting coverage for voluntarily sending property as a result of unauthorized instructions. This lawsuit followed.

ESM moves for summary judgment claiming that it is entitled to coverage under the commercial general liability ("CGL") provision for the credits it gave its customers for the mis-shipped products ESM was not able to recover. ESM also argues it is entitled to coverage under the commercial property coverage ("CPC") provision because it incurred a direct physical loss of the property at its premises when the product was wrongly shipped. ESM also seeks a finding by the Court of bad faith on Owners' part for failing to adequately investigate its claim before denying it.

Owners moves for summary judgment claiming that ESM is not entitled to coverage under the CPC provision because the facts do not fall within a covered loss under the policy and it did not engage in bad faith in denying ESM's claim.

## DISCUSSION

### I. The Commercial General Liability Provision Does Not Apply Here

Plaintiff argues that it is entitled to coverage under the commercial general liability ("CGL") provision of the Policy. The CGL provision applies where third-parties bring claims against ESM. Under the CGL provision Owners then has the right and duty to defend and indemnify against those claims. Where the CGL provision applies, Owners is obligated to pay the amounts ESM is liable to pay the third-parties as damages. Under the CGL provision, ESM is not entitled to settle third-party claims without Owners' involvement.

There is no dispute that Owners was never involved in the communications between ESM and the third-parties. It is undisputed that no third-party brought a liability claim against ESM for the losses alleged in this action. The issue therefore is whether Owners is liable to ESM for the credits ESM gave its customers to compensate for the unrecovered erroneously-shipped product where no formal legal claim was made by the customers against ESM and no judicial finding of liability was made for the credits.

Because the CGL policy is only applicable in cases where third-parties bring legal claims against ESM which Owners then has the right and duty to defend and indemnify, the Court finds that the CGL provision does not apply to these facts. ESM is not entitled to coverage under the CGL provision for the credits it gave its customers.

II.  There is Insufficient Evidence to Support a Finding of Bad Faith on the Part of Defendant in Denying Coverage.

Owners' adjustor testified at his deposition that he spent only approximately 15 minutes reviewing the policy forms before reaching his determination that ESM is not entitled to coverage. ESM argues that this fact demonstrates that Owners spent insufficient time on its claim and therefore did not act in good faith in denying it.

Owners points out that the adjustor assigned to the claim is an experienced senior claims specialist and while he testified that he spent about 15 minutes reviewing the policy forms, he was never asked in his deposition how long he spent investigating the claim.  Owners contends that there was a diligent investigation of the facts and a good faith denial under the policy provisions. The Court finds that based on the facts presented in the record, there is not sufficient evidence to support a finding of bad faith on the part of Owners' in denying ESM's claim.


III.  The Commercial Property Coverage Provision Provides Coverage For the Loss of the Unretrieved Products.

"Utah courts have long held that insurance policies should be construed liberally in favor of the insured and their beneficiaries so as to promote and not defeat the purpose of insurance." *Fire Ins. Exch. v. Oltmanns*, 285 P.3d 802 (Utah App. 2012).  Coverage is to be denied when insurance companies "use language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided." *Utah Farm Bureau Ins. Co. v. Crook*, 980 P.2d 685 (Utah 1999).  When an insurance policy contains ambiguous language, courts must construe the language against the insurer. *See Anaconda*

*Minerals Co. v. Stoller Chemical Co., Inc.*, 773 F.Supp. 1498, 1504 (D. Utah 1991). Language that is fairly susceptible to different interpretations must be construed in favor of coverage. *See United States Fidelity & Guar. Co., v. Sandt*, 854 P.2d 519, 521-22 (Utah 1993). The commercial property coverage ("CPC") provision in the Policy provides that Owners will pay for "direct physical loss of or damage to covered property at the premises described in the declarations caused by or resulting from any covered cause of loss."

Owners denied coverage under the CPC provision because it contends: (1) there was no direct physical loss of the property; and (2) if there was a loss, it did not occur on ESM's premises. Owners cites to Black's Law Dictionary in support of its assertion that the term "loss" requires the physical destruction of the property. Because the property was not physically altered or destroyed, Owners argues it is not a covered loss. ESM asserts that the term "loss" is not defined in the policy and there is no explicit requirement that the loss be physically altered or destroyed. It is ESM's position that it suffered a direct physical loss of the property when the products were shipped erroneously to the wrong customers or in the wrong amounts and ESM no longer had tangible control over or possession of it.

The term "direct physical loss" is not defined in the Policy. Nor is it stated that "direct physical loss" requires destruction of or any physical impact altering the property itself. "Direct physical loss" of the property is not clear or unmistakable. A plain reading of the term as used in the CPC provision could include the loss of physical possession or control of property that was not physically destroyed or altered in any way. The term "loss" is susceptible to different interpretations and under Utah law must therefore be construed in favor of coverage. *See Sandt*,

854 P.2d 521-22. The Court finds that ESM suffered a direct physical loss of the products it sent to the wrong customers or in the wrong amounts.

In order to qualify for coverage under the CPC provision, the direct physical loss must have occurred to the property on ESM's premises. ESM alleges that the loss occurred on its premises when the products were mis-labeled and shipped from ESM's premises because that is when ESM lost physical control of the products. The Court agrees.

Alternatively, Owners argues that even if the CPC provision applies, coverage is nevertheless barred by an exclusion to coverage that states "We will not pay for loss of or damage to . . .Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions." There is no dispute that the shipping instructions ESM received were authorized and correct; it was the particular employee in each instance who unintentionally did not follow the instructions as given that caused the direct physical loss of the property. Based on the facts on the record, the Court finds that this exclusion does not apply here.

For the foregoing reasons, the Court finds that the CPC provision applies to the facts of this claim and that ESM is entitled to coverage.

IV.  Damages are Limited to $92,759.36.

ESM claims it is entitled to recover the following from Owners under the Policy:

$ 92,759.36    for cost of products erroneously shipped

$ 51,580.88    for shipping costs associated with retrieving the erroneously shipped products

$160,770.90    for labor costs associated with retrieving the erroneously shipped products

Owners argues that the last two figures are not covered because they are business income expenses and that while there is business income coverage under the Policy, it is only applicable where there is a suspension of ESM's business and a period of restoration. The Court finds that because the CPC provision applies, ESM is entitled to the cost of the unrecovered products erroneously shipped due to the direct unintentional actions of its employees. This amount as alleged by ESM is $92,759.36. Because the additional shipping and labor costs constitute business costs and there is no dispute that there was no suspension or period of restoration of ESM's business, this provision does not apply. Accordingly, the Court declines to order coverage for those items.

## CONCLUSION

For the foregoing reasons, the Court grants partial summary judgment to Owners. Specifically the Court orders that ESM is not entitled to coverage under the CGL policy; and that there is no evidence of bad faith on the part of Owners in denying ESM's claim. The Court grants partial summary judgment to ESM. Specifically the Court orders that ESM is entitled to coverage for the costs of the unretrieved erroneously shipped products under the CPC provision. The Court denies coverage for ESM's additional shipping and labor costs.

Accordingly, Owners summary judgment motion is hereby GRANTED IN PART and DENIED IN PART. ESM's motion for summary judgment is hereby GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

DATED this 29th day of August, 2018.

_____
Dee Benson
United States District Judge